**UNITED STATES of America,
Appellee,**

v.

**Adalberto GARCIA, Defendant–
Appellant.**

**No. 00–1408.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 18, 2001.

Decided Feb. 20, 2001.

Marjorie M. Smith, Englander & Smith, Tappan, NY, on the brief, for defendant-appellant.

Greg D. Andres, Asst. U.S. Atty., (Loretta E. Lynch, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., on the brief), Brooklyn, NY, for appellee.

Before JON O. NEWMAN, LEVAL, and SACK, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal of a criminal sentence requires consideration of one of the questions arising in the wake of the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The question is whether a jury, rather than a sentencing judge, must find a sentencing fact that affects only a defendant's Guidelines sentencing range within a statutory maximum, but has no bearing on sentencing above a statutory maximum, and does not trigger a mandatory statutory minimum. In other words, the fact issue in this case affects *only* the Guidelines calculation. Adalberto Garcia appeals from a judgment of the United States District Court for the Eastern District of New York (John Gleeson, District Judge), sentencing him to 27 months after his conviction by a jury for food stamp offenses involving more than $100. We conclude that the fact issue at Garcia's sentencing—the extent to which the amount of the dollar loss caused by his offenses exceeded $100—was an issue for the sentencing judge, without the need for jury determination. We therefore affirm.

## Background

Garcia was found guilty by a jury of three counts of food stamp fraud. The first count charged conspiracy to illegally present and redeem food stamps, in violation of 18 U.S.C. § 371; the second charged illegally presenting and redeeming food stamps worth $100 or more, in violation of 7 U.S.C. § 2024(c); and the third charged illegally transferring food stamps worth $100 or more to another person, in violation of 7 U.S.C. § 2024(b). For purposes of the issue decided in this opinion, the precise facts of Garcia's offenses need not be detailed.

In determining Garcia's sentence, Judge Gleeson applied U.S.S.G. § 2F1.1, the controlling Guideline for food stamp frauds. *See* United States Sentencing Commission, *Guidelines Manual*, App. A at 443 (2000). Starting with a base offense level of 6, *see* U.S.S.G. § 2F1.1(a), he then determined that the loss caused by Garcia's frauds was $791,987, which required an increase of 10 levels for a loss between $500,000 and $800,000, *see id.* § 2F1.1(b)(1)(K). He then added 2 levels for more than minimal planning, *see id.* § 2F1.1(b)(2)(A), to arrive at an adjusted offense level of 18. The resulting sentencing range for a defendant in Criminal History Category I was 27–33 months, and Judge Gleeson imposed a sentence at the bottom of that range.

## Discussion

Garcia's specific objections to details of the loss calculation have been rejected in a summary order filed today. *See United States v. Garcia*, 240 F.3d 181 (2d Cir. 2001). In this opinion we consider only his contention that *Apprendi* requires that the jury should have determined the amount of his fraud loss for purposes of applying the Sentencing Guidelines. To make clear the narrowness of the issue presented by this contention, we must elaborate the penalty provisions of the substantive statutes that Garcia was charged with violating and clarify the significance of the fact-finding performed by the jury and the sentencing judge.

Under 7 U.S.C. § 2024(c), the maximum penalties are one year in prison and/or a

$1,000 fine if the food stamps unlawfully redeemed are worth less than $100, and five years in prison and/or a $20,000 fine if the food stamps unlawfully redeemed are worth more than $100. Under subsection 2024(b), the maximum penalties are one year in prison and/or a fine of $1,000 if the food stamps unlawfully transferred are worth less than $100, five years in prison and/or a fine of $10,000 if the food stamps unlawfully transferred are worth $100 or more but less than $5,000, and twenty years and/or a fine of $250,000 if the food stamps unlawfully transferred are worth $5,000 or more.[1] Thus, both of the substantive statutes specify intermediate maximum punishments, the limits of which depend on the value of the food stamps involved. The conspiracy provision alleged to have been violated in Count One carries a maximum penalty of five years in prison. *See* 18 U.S.C. § 371.

In both Counts Two and Three, which alleged violations of the substantive food stamp statutes, the value of the food stamps redeemed (subsection 2024(c)) and transferred (subsection 2024(b)), respectively, was alleged to have been "of the value of $100 or more," and the jury was specifically instructed that an element of the offense charged in each of these counts was that the value of the food stamps was $100 or more. By its guilty verdict, the jury determined that Garcia's frauds involved more than $100 worth of food stamps, thereby exposing him to a maximum sentence of five years on each count (the absolute maximum of subsection 2024(c) and the intermediate maximum of subsection 2024(b)). At sentencing, Judge Gleeson found that the fraud loss caused by Garcia was $791,987 and used this finding to determine Garcia's adjusted offense level and resulting sentence. This amount comprised $368,000 of food stamps transferred in violation of subsection 2024(b) and $423,987 of food stamps redeemed in

violation of subsection 2024(c). Although the $368,000 figure was substantially above the $5,000 value of food stamps that subsection 2024(b) establishes as the threshold for exposure to a maximum sentence of twenty years, Judge Gleeson's sentence of 27 months (concurrent on each count) did not exceed either the five-year intermediate maximum for subsection 2024(b) or the five-year absolute maximum for subsection 2024(c).

Thus, Garcia's contention requires us to consider the issue of the application of *Apprendi* to what is only a Guidelines adjustment: whether a jury must find a sentencing fact that affects only the defendant's Guidelines sentencing range within a statutory maximum, but has no bearing on increasing a sentence above a statutorily specified maximum or on triggering a mandatory statutory minimum.

In *Apprendi* the Supreme Court considered a sentence imposed on a count charging second degree possession of a firearm for an unlawful purpose, *see* N.J. Stat. Ann. § 2C:39–4a (West 1995), for which the normal maximum penalty was 10 years. However, New Jersey law provided an enhanced sentence of up to 20 years if the offense was committed with a biased purpose. *See id.* § 2C:44–3(e) (West Supp.2000). The sentencing judge found that the biased purpose had been proven, and imposed a sentence of 12 years.

The Court ruled that the enhancement had been unconstitutionally determined for lack of a jury finding that the biased purpose had been proven beyond a reasonable doubt. In stating its conclusion as to what it considered the "narrow issue" presented, *see Apprendi*, 120 S.Ct. at 2354, the Court wrote:

> Other than the fact of a prior conviction, any fact that increases the penalty for a crime *beyond the prescribed statutory*

---

1. Subsections 2024(b) and (c) provide mandatory minimum prison sentences for a subsequent conviction for offenses involving more than specified dollar amounts. These manda- tory minimum provisions are irrelevant to Garcia, who has no prior food stamp conviction.

*maximum* must be submitted to a jury, and proved beyond a reasonable doubt. *Id.* at 2362–63 (emphasis added); *see also id.* at 2367 (Scalia, J., concurring) (referring to "what [the Constitution] has been assumed to guarantee throughout our history—the right to have a jury determine those facts that determine the *maximum sentence the law allows*") (emphasis added); *Jones v. United States,* 526 U.S. 227, 243 n. 6, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) ("[U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the *maximum penalty* for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.") (emphasis added).

▇ We see nothing in the Court's holding in *Apprendi* or its explication of the holding that alters a sentencing judge's traditional authority to determine those facts relevant to selection of an appropriate sentence within the statutory maximum, an authority the Supreme Court has recognized both before the Sentencing Guidelines, *see McMillan v. Pennsylvania,* 477 U.S. 79, 85, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), and since their adoption, *see Witte v. United States,* 515 U.S. 389, 402, 115 S.Ct. 2199, 132 L.Ed.2d 351 (1995) ("The relevant conduct provisions are designed to channel the sentencing discretion of the district courts and to make mandatory the consideration of factors that previously would have been optional.").

We recognize that the four dissenting Justices in *Apprendi* expressed concern that the principle that they understood underlies the majority's ruling threatened the validity of fact-finding by a sentencing judge in applying the Sentencing Guidelines:

> The actual principle underlying the Court's decision may be that any fact (other than prior conviction) that has the effect, *in real terms,* of increasing the maximum punishment beyond an otherwise applicable range must be submitted to a jury and proved beyond a reasonable doubt. The principle thus would apply not only to schemes like New Jersey's, under which a factual determination exposes the defendant to a sentence beyond the prescribed statutory maximum, but also to all determinant-sentencing schemes in which the length of a defendant's sentence within the statutory range turns on specific factual determinations (*e.g.,* the federal Sentencing Guidelines).

*Apprendi,* 120 S.Ct. at 2391 (O'Connor, J., with whom Rehnquist, C.J., and Kennedy and Breyer, JJ., join, dissenting) (emphasis in original) (citation omitted).

For several reasons, however, we decline to extend the majority's holding on the basis of the alarms sounded by the dissenters. In the first place, a dissenting opinion is often an unreliable basis for determining the scope of a majority decision. Second, even the dissenters acknowledged that their dire predictions were tentative and conditional:

> The Court *appears* to hold today, however, that a defendant is entitled to have a jury decide, by proof beyond a reasonable doubt, every fact relevant to the determination of sentence under a determinate-sentencing scheme. *If* this is an accurate description of the constitutional principle underlying the Court's opinion, its decision will have the effect of invalidating significant sentencing reform accomplished at the federal and state levels over the past three decades.

*Id.* at 2393–94 (emphases added). Third, even the dissenters repeatedly characterized the majority's decision as announcing an "'increase in the maximum penalty' rule." *Id.* at 2387, 2389.

We also recognize that one member of the *Apprendi* majority intimated in a footnote that *Apprendi's* reasoning might ex-

tend to fact-finding for purposes of the Sentencing Guidelines:

> It is likewise unnecessary to consider whether (and, if so, how) the rule regarding elements applies to the Sentencing Guidelines, given the unique status that they have under *Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). But it may be that this special status is irrelevant, because the Guidelines "have the force and effect of laws." *Id.*, at 413, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (Scalia, J., dissenting).

*Id.* at 2380 n. 11 (Thomas, J., concurring).[2] As with the *Apprendi* dissent, we consider this footnote an insufficient basis for us to extend *Apprendi* to a straightforward Guidelines case. Until advised to the contrary by the Supreme Court, we do not believe that a sentencing judge's traditional fact-finding has been replaced by a requirement of jury fact-finding.

 We therefore join the other nine circuits that have ruled on direct review that a guideline factor, unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum, may be determined by a sentencing judge and need not be submitted to a jury. *See United States v. Baltas*, 236 F.3d 27, 40–41 (1st Cir.2001); *United States v. Williams*, 235 F.3d 858, 863–64 (3d Cir.2000); *United States v. Doggett*, 230 F.3d 160, 164–65 (5th Cir.2000); *United States v. Corrado*, 227 F.3d 528, 542 (6th Cir.2000); *United States v. Nance*, 236 F.3d 820, 826 (7th Cir.2000); *United States v. Aguayo–Delgado*, 220 F.3d 926, 933 (8th Cir.2000); *United States v. Hernandez–Guardado*, 228 F.3d 1017, 1026–27 (9th Cir.2000); *United States v. Heckard*, 238 F.3d 1235–36, (10th Cir.2001); *United States v. Nealy*, 232 F.3d 825, 829 n. 3 (11th Cir.2000); *see also United States v. Angle*, 230 F.3d 113, 121–24 (4th Cir.2000), *vacated and ordered to be reheard in banc*, (4th Cir. Jan. 17, 2001); *United States v. Layeni*, No. 00–3031, 2000 WL 1683476 (D.C.Cir. Oct. 18, 2000) (denying certificate of appealability to review *Apprendi* claim, presented on collateral attack, because sentence did not exceed statutory maximum).

### Conclusion

For the reasons set forth above, and the additional reasons set forth in a summary order filed today, the judgment and sentence of the District Court are affirmed.

---

**2.** It is not clear whether Justice Thomas's intimation concerning the Sentencing Guidelines derives from his understanding of the "rule" the majority has announced in *Apprendi* or what he called the "broader rule," 120 S.Ct. at 2367 (Thomas, J., concurring), that he favors. Justice Scalia concurred in portions of Justice Thomas's concurrence, but not Part III, which contains footnote 11. The *Apprendi* dissenters read Justice Thomas's footnote to "essentially concede[ ] that the rule outlined in his concurring opinion would require the invalidation of the Sentencing Guidelines." 120 S.Ct. at 2391 (O'Connor, J., dissenting).