In the
United States Court of Appeals
For the Seventh Circuit

No. 00-2691

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ROY ALLEN SKIDMORE,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 99 CR 120--Larry J. McKinney, Chief Judge.

Argued November 30, 2000--Decided June 19, 2001


  Before Ripple, Manion, and Kanne, Circuit
Judges.

  Kanne, Circuit Judge.  Special Agents of
the Bureau of Alcohol, Tobacco, and
Firearms (the "ATF") executed a search
warrant at the residence of Roy Allen
Skidmore in Daleville, Indiana. The
search of the residence yielded some
twenty-four firearms and 3800 rounds of
ammunition. Skidmore was indicted for
possession of firearms and ammunition as
a convicted felon in violation of 18
U.S.C. sec.sec. 922(g)(1) and 924(e). He
was tried and convicted by a jury of
violating 18 U.S.C. sec. 922(g)(1).
Because Skidmore had previously been
convicted of three unrelated violent
felonies, the district court sentenced
him pursuant to 18 U.S.C. sec. 924(e),
the Armed Career Criminal Act, to a term
of 262 months incarceration.

  Skidmore now appeals, challenging both
his conviction and his sentence. He
contests the validity of his conviction
on two separate grounds. First, Skidmore
argues that the district court denied him
a fair trial by allowing Theresa Wolfe to
testify as to certain statements made by
his wife, Yolanda Skidmore. Second,
Skidmore attacks the district court's use
of the word "failure" in the jury
instructions to describe his decision not
to present witnesses or produce any other
evidence at his trial. With regard to his

sentence, Skidmore argues that in two respects, his sentence of 262 months violated his constitutional rights in light of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). First, Skidmore contends that the district court improperly sentenced him pursuant to 18 U.S.C. sec. 924(e), when the jury only found him guilty of violating 18 U.S.C. sec. 922(g)(1). Second, Skidmore asserts that the district court's application of the United States Sentencing Guidelines (U.S.S.G.) sections 4B1.4(b)(3)(A) and (c)(2) to increase his sentence violated his due process rights in light of Apprendi. For the reasons stated below, we uphold both Skidmore's conviction and his sentence.

Analysis

A. Skidmore's Challenges to His Conviction

1. The Admissibility of Statements Made by Mrs. Skidmore

Skidmore first challenges the validity of his conviction by contending that the district court abused its discretion and denied him a fair trial by admitting Theresa Wolfe's testimony that Skidmore's wife made incriminating statements regarding his status as a convicted felon. Wolfe was employed as a secretary at the Southside Gunshop ("gun shop"), a federally licensed firearms dealer in Muncie, Indiana. Wolfe met the Skidmores at the gun shop and became friends with them on a social level. At Skidmore's trial, Wolfe testified that the Skidmores came into the gun shop together and examined various firearms with the gun shop's owner, William Crowder. During these visits, Crowder would hand different firearms to Wolfe instructing her to fill out a Form 4473/1 for each firearm. Mrs. Skidmore would then complete the portion of each of these forms designated for purchaser information, indicating that she was purchasing the firearms. Wolfe indicated, however, that she never saw Mrs. Skidmore give Crowder any money. While filling out one of these forms, Wolfe asked Mrs. Skidmore why she was signing the form. Wolfe testified that Mrs. Skidmore told her that her husband could not sign for

the firearms because he had been in prison. Skidmore's counsel objected to the admissibility of Wolfe's testimony regarding Mrs. Skidmore's statements as to why she was signing the forms. The district court overruled this objection, however, allowing these statements to be admitted as a declaration of a co-conspirator pursuant to Rule 801(d)(2)(E) of the Federal Rules of Evidence./2

We review the district court's decision to admit Wolfe's testimony pursuant to Rule 801(d)(2)(E) for an abuse of discretion. See United States v. Maholias, 985 F.2d 869, 878 (7th Cir. 1993). "For coconspirator statements to be admitted pursuant to Rule 801(d)(2)(E), the Government must prove by a preponderance of the evidence that a conspiracy existed, that both the declarant and the defendant were members of the conspiracy, and that the statements were made in the course and in furtherance of the conspiracy." United States v. Ladd, 218 F.3d 701, 704 (7th Cir. 2000). We review the district court's findings with regard to these elements for clear error. See United States v. Godinez, 110 F.3d 448, 454 (7th Cir. 1997). While the Supreme Court has not determined whether a hearsay statement on its own and without other independent evidence is enough to establish the existence of a conspiracy such that the statement may be properly admitted under 801(d)(2)(E), the Court's decision in Bourjaily v. United States, 483 U.S. 171, 107 S. Ct. 2775, 97 L. Ed. 2d 144 (1987), held that "a court, in making a preliminary factual determination under 801(d) (2)(E), may examine the hearsay statements sought to be admitted." Id. at 181. To satisfy the "existing conspiracy" requirement, "[t]he Government need not . . . charge a conspiracy in order for a coconspirator statement to be admitted." Godinez, 110 F.3d at 454. In examining what constitutes a statement in "furtherance of a conspiracy," we have explained that a wide range of statements qualify, "includ[ing] comments designed to assist in recruiting potential members, to inform other members about the progress of the conspiracy, to control damage to or detection of the conspiracy, to hide the criminal objectives of the conspiracy, or to instill confidence and prevent the desertion of other members."

United States v. Johnson, 200 F.3d 529, 532 (7th Cir. 2000).

The government's theory in this case was that Mrs. Skidmore was a straw purchaser for her husband, designating herself as the purchaser and owner of firearms that Skidmore wanted to acquire but could not do so legally because he was a convicted felon. Thus, the government contends that Mrs. Skidmore's statement to Wolfe about her husband was made during the course of and in furtherance of a conspiracy to unlawfully obtain firearms for Skidmore. The government established that Skidmore and his wife visited the gun shop on numerous occasions viewing firearms with the store's owner, William Crowder. If a decision was made to purchase a firearm, Crowder would hand the firearm to Wolfe, with whom Mrs. Skidmore would then fill out the required Form 4473 for that particular firearm. Wolfe testified that she never saw Mrs. Skidmore ever give Crowder any money. These facts, taken with Mrs. Skidmore's explanation that she was filling out the forms required for the purchase of a firearm because her husband had been in prison, validate the government's theory. Wolfe, a friend of the Skidmores, was obviously curious about the peculiar process by which the Skidmores purchased firearms when she asked Mrs. Skidmore why she was filling out the mandatory forms. Mrs. Skidmore's decision to reveal to Wolfe the actual reason she repeatedly designated herself as the purchaser of these firearms can be characterized as an expression of trust as well as an attempt to secure the confidence of her friend, thereby preventing further detection of what she and her husband were doing. It was not clear error, therefore, for the district court to find that this statement was made in furtherance of the Skidmores' conspiracy to acquire firearms for Skidmore. Thus, we conclude that the district court did not abuse its discretion in admitting Wolfe's testimony of Mrs. Skidmore's explanation as to why she was designating herself as the purchaser of multiple firearms pursuant to Rule 801(d) (2)(E).

2. Jury Instructions

Skidmore also asserts that his conviction is invalid because of the district court's use of the word

"failure" in one of the instructions read to the jury to describe his decision not to present any witnesses or produce any evidence. Skidmore contends that the court's instruction was an error that prejudiced his entire trial. Because Skidmore did not object to this instruction until after the jury had begun to deliberate, we review this claim for plain error. See United States v. Ray, 238 F.3d 828, 831 (7th Cir. 2001) (stating that when a defendant does "not object to the jury instruction in question at trial, we review the district court's instructions for plain error"). Our plain error standard of review permits us "'to correct only particularly egregious errors for the purpose of preventing a miscarriage of justice[,] . . . which implies the conviction of one who but for the error would have been acquitted.'" United States v. Krankel, 164 F.3d 1046, 1052 (7th Cir. 1998) (quoting United States v. Linwood, 142 F.3d 418, 422 (7th Cir. 1998)). Additionally, when analyzing a defendant's challenge to a specific jury instruction, "we must view the instructions as a whole and consider the challenged instruction both in the context of the other instructions given and in light of the allegations of the complaint, the opening and closing arguments, and the evidence of the record." Resnover v. Pearson, 965 F.2d 1453, 1463 (7th Cir. 1992).

The section of the instruction Skidmore challenges stated that "[t]he jury will always bear in mind that the law never imposes on a defendant in a criminal case the duty of calling any witnesses or producing any evidence, and no adverse inference may be drawn from his failure to do so." It should first be noted that this case does not implicate Skidmore's privilege against compulsory self-incrimination under the Fifth Amendment. See United States v. Sblendorio, 830 F.2d 1382, 1391 (7th Cir. 1987) (noting that a "defendant's decisions about evidence other than his own testimony do not implicate the privilege"). Instead, what is at issue here is the ever present notion in our criminal justice system that Skidmore was to be presumed innocent of the charges against him until proven guilty, and that he had no obligation whatsoever to call any witnesses or produce any evidence of his innocence at his trial. We agree with Skidmore that

his decision not to present any witnesses or evidence should not have been referred to as a "failure" of any kind on his part. The court's use of this word in the instruction is problematic because, as Skidmore notes in his brief, it carries with it the possible implication from the court to the jury that Skidmore has neglected a responsibility to present testimony and other evidence. A conscious decision by a defendant not to testify, present other witnesses, or produce any other evidence should not be characterized in the instructions as constituting a failure on the part of a defendant. Ironically, the district court used the word failure in explaining to the jury that Skidmore had a right not to present witnesses or any other evidence and that it was not permitted to draw any negative conclusions from his decision to exercise this right.

While we take this opportunity to emphasize that this language should not be used in similar jury instructions in the future,/3 we find that the district court's inclusion of the word failure in this case does not constitute plain error. The portion of the instruction Skidmore challenges is a section of an individual instruction that was one of twenty-six instructions read to the jury. Immediately before the court read the challenged section to the jury, it explained within the same instruction that:

The defendant is presumed to be innocent of the charge against him. This presumption remains with the defendant throughout the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The government has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the Government throughout the case. The defendant is not required to prove his innocence or to produce any evidence.

Furthermore, immediately following the challenged section, also within the same instruction, the court properly instructed the jury regarding Skidmore's right not to testify: "the defendant in a

criminal case has an absolute right not to testify. The fact that the defendant did not testify should not be considered by you in any way in arriving at your verdict." Although the court's use of the word failure was indeed a poor choice, the context of the instruction in which the word was used was one in which the court was clearly indicating to the jury that the government had the burden of proving Skidmore's guilt, and that he had no obligation to prove his innocence. Therefore, we find that this individual instruction, read in its entirety, along with the twenty-five other instructions presented to the jury, was not so tainted by the district court's use of the word failure that we can now conclude that Skidmore might have been acquitted but for the court's inclusion of this word in the jury instructions.

## B.  Skidmore's Challenges to His Sentence

Both of Skidmore's challenges to his sentence of 262 months incarceration are based on the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Because he did not raise these claims in the district court, we review them for plain error. See United States v. Lamarre, 248 F.3d 642, 649 (7th Cir. 2001).

### 1.  The Application of 18 U.S.C. sec. 924(e)

Skidmore first challenges his sentence by contending that he was unconstitutionally sentenced as an armed career criminal pursuant to 18 U.S.C. sec. 924(e)(1). He argues that, although the crime for which the jury convicted him--being a felon in possession of firearms in violation of sec. 922(g)(1)-- only carries a sentence of up to ten years, he was improperly sentenced under sec. 924(e)(1), the Armed Career Criminal Act, which carries a maximum penalty of life imprisonment, based on his having been previously convicted of three separate violent felonies. Skidmore asserts that under Apprendi, whether he had been convicted of three separate violent felonies is a fact that should have been presented to the grand jury, tried before the jury, and found beyond a reasonable doubt before he was sentenced under sec. 924(e)(1). Because the jury

was not presented with the question of whether Skidmore had been convicted of these crimes, he argues that the district court's imposition of a sentence pursuant to sec. 924(e)(1) was invalid. Thus, he asks this Court to reverse and remand with instructions to the district court to re-sentence him to no more than 120 months.

Section 922(g)(1) explains that it is unlawful for any person:

who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year; to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

Skidmore is correct that ordinarily the maximum sentence for a violation of sec. 922(g)(1) is ten years. See 18 U.S.C. sec. 924(a)(2). However, a defendant that is found to have violated sec. 922(g) "and has three previous convictions by any court referred to in section 922(g)(1) . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. sec. 924(e)(1). Thus, in this case, because Skidmore had been convicted of three separate violent felonies,/4 as defined by 18 U.S.C. sec. 924(e)(2)(B),/5 the maximum sentence Skidmore faced was life imprisonment.

In Almendarez-Torres v. United States, 523 U.S. 224, 118 S. Ct. 1219, 140 L. Ed. 2d 350 (1998), a case decided before the Court's decision in Apprendi, the Court concluded that recidivism used to enhance a defendant's maximum penalty is not an element of a crime that must be charged in an indictment and found beyond a reasonable doubt but instead is a sentencing factor. Id. at 239, 243-44. Recognizing that this holding forecloses his argument here, Skidmore argues that Apprendi severely undermines the validity of Almendarez-Torres. In Apprendi the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be

submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 466. While the majority opinion in Apprendi noted that "it is arguable that Almendarez-Torres was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested," 530 U.S. at 489 (footnote omitted), the Court specifically carved out and maintained the exception for "prior convictions" explained in Almendarez-Torres. See id. Thus, "Apprendi does not overrule the holding of Almendarez-Torres . . . that penalty enhancements based on recidivism need not be established beyond a reasonable doubt." United States v. Brough, 243 F.3d 1078, 1081 (7th Cir. 2001). Because Skidmore's three separate violent felony convictions were the reason he was subjected to the enhanced statutory maximum provided by sec. 924(e) for his violation of sec. 922(g)(1), we conclude that his sentence of 262 months was proper under Apprendi. See 18 U.S.C. sec. 924(e)(1); see also United States v. Thomas, 242 F.3d 1028, 1034 (11th Cir. 2001) (citation omitted) (finding no Apprendi violation in imposition of 295 month sentence where jury found the defendant guilty of violating sec. 922(g) and defendant had three prior violent felony convictions because "sec. 924(e)(1) authorizes a punishment of not less than fifteen years (which means up to life imprisonment) for violation of sec. 922(g) where the defendant has previously been convicted of three violent felonies or serious drug offenses"); United States v. Dorris, 236 F.3d 582, 586-88 (10th Cir. 2000) (dismissing defendant's claim that 210 month sentence violated Apprendi when sentence was imposed pursuant to sec. 924(e) after jury convicted defendant of violating sec. 922(g)(1) and defendant had three prior violent felony convictions); United States v. Mack, 229 F.3d 226, 235 n.12 (3d Cir. 2000) (noting that Apprendi did not affect defendant's 262 month sentence, imposed pursuant to sec. 924(e), after a jury found defendant guilty of violating sec. 922(g)(1) because the statutory maximum for that defendant, who had three prior violent felony convictions, was life imprisonment).

2.   The District Court's Calculation of Skidmore's Sentence Under the Sentencing Guidelines

Skidmore also challenges his sentence by asserting that the district court's use of U.S.S.G. sections 4B1.4(b)(3)(A) and (c)(2) to increase his sentence violated his due process rights in light of Apprendi. Skidmore was sentenced as an armed career criminal pursuant to section 4B1.4 because his three prior violent felony convictions rendered him "subject to an enhanced sentence under the provisions of 18 U.S.C. sec. 924(e)." U.S. Sentencing Guidelines Manual sec. 4B1.4(a) (1998). At Skidmore's sentencing hearing, the district court determined that Skidmore had been in possession of a silencer. Because this silencer was a type of firearm described in 26 U.S.C. sec. 5845(a)(7), U.S.S.G. sections 4B1.4(b)(3)(A) and (c)(2) required Skidmore's base level offense to be set at 34 and his criminal history category to be set at VI./6 This combination resulted in a sentencing range of 262-327 months. The court proceeded to sentence Skidmore to 262 months, the low end of this range.

Skidmore argues that the increase in his sentence provided for by sections 4B1.4(b)(3)(A) and (c)(2) is unconstitutional under the Supreme Court's decisions in Apprendi and Castillo v. United States, 530 U.S. 120, 120 S. Ct. 2090, 147 L. Ed. 2d 94 (2000)./7 According to Skidmore, these guideline sections impermissibly increased his sentence based on the district court's determination, by a preponderance of the evidence, that he possessed a specific type of firearm described in 26 U.S.C. sec. 5845(a). Skidmore contends that Apprendi and Castillo mandate that whether he possessed a silencer is a fact that should have been presented to the jury and found beyond a reasonable doubt. We do not agree.

We certainly recognize, as other circuits have observed, that "four dissenting justices in Apprendi expressed concern that the principle that they understood underlies the majority's ruling threatened the validity of fact-finding by a sentencing judge in applying the Sentencing Guidelines." United States v. Garcia, 240 F.3d 180, 183 (2d Cir. 2001). Indeed, "one member of the Apprendi majority intimated in a footnote that Apprendi's reasoning might extend to

fact-finding for purposes of the Sentencing Guidelines." Id. at 183-84. We have concluded, however, along with every other circuit to consider this issue, that a district court may make various factual determinations under the guidelines, thereby affecting a defendant's sentence, so long as such determinations do not cause the defendant's sentence to exceed the prescribed statutory maximum for that crime. See Talbott v. Indiana, 226 F.3d 866, 869 (7th Cir. 2000) ("Apprendi does not affect application of the relevant-conduct rules under the Sentencing Guidelines to sentences that fall within a statutory cap."); accord United States v. Robinson, 241 F.3d 115, 119 (1st Cir. 2001); United States v. Garcia, 240 F.3d at 184; United States v. Williams, 235 F.3d 858, 863 (3d Cir. 2000); United States v. Obi, 239 F.3d 662, 667 (4th Cir. 2001); United States v. Miranda, 248 F.3d 434, 444 (5th Cir. 2001); United States v. Munoz, 233 F.3d 410, 414 (6th Cir. 2000); United States v. Aguayo-Delgado, 220 F.3d 926, 934 (8th Cir. 2000); United States v. Hernandez-Guardado, 228 F.3d 1017, 1027 (9th Cir. 2000); United States v. Wilson, 244 F.3d 1208, 1215-16 (10th Cir. 2001); United States v. Nealy, 232 F.3d 825, 829 (11th Cir. 2000); In Re: Sealed Case, 246 F.3d 696, 699 (D.C. Cir. 2001). The statutory maximum for Skidmore's conviction was life imprisonment. Because Skidmore's sentence was within this maximum, we dismiss his claim that the district court's factual findings under the sentencing guidelines improperly increased his sentence under Apprendi. As we explained in Talbott, "when the statutory maximum is life imprisonment, Apprendi is beside the point." Talbott, 226 F.3d at 869.

Conclusion

   For the reasons stated above, we AFFIRM both Skidmore's conviction and his sentence.

FOOTNOTES

/1 This form must be completed for every firearm sold at a federally licensed firearms dealer.

/2 "A statement is not hearsay if . . . (2) The statement is offered against a party and is . . . (E) a statement by a coconspirator of a party

during the course and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E).

/3 Although no Seventh Circuit Pattern jury instruction actually uses the word failure in the context in which it is used in this case, the genesis of the district court's use of this language could possibly be found in the title of section 3.01 of the Pattern Criminal Federal Jury Instructions for the Seventh Circuit, which is unfortunately named "Failure of Defendant to Testify." Pattern Crim. Fed. Jury Instr. for the Seventh Circuit sec. 3.01.

/4 The Pre-Sentencing Report (the "PSR") prepared for Skidmore's sentencing hearing indicated that Skidmore had been convicted of three felonies: Second Degree Burglary and Stealing in Missouri, Armed Robbery in Indiana, and Battery in Indiana. Skidmore did not challenge the existence or validity of these convictions. Thus, the PSR satisfied the government's burden under 18 U.S.C. sec. 924(e)(1) to establish that Skidmore had three prior violent felony convictions. See United States v. Hudspeth, 42 F.3d 1015, 1019 n.6 (7th Cir. 1994).

/5 18 U.S.C. sec. 924(e)(2)(B) explains that "violent felony" in this subsection:

means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that--

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

/6 U.S.S.G. sec. 4B1.4 explains that:

(b) The offense level for an armed career criminal is the greatest of:

(1) the offense level applicable from Chapters Two and Three; or

(2) the offense level from sec. 4B1.4 (Career Offender) if applicable; or

(3)(A) 34, if the defendant used or possessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as

defined in sec. 4B1.2(a), or if the firearm possessed by the defendant was of a type de- scribed in 26 U.S.C. sec. 5845(a); or

(B) 33, otherwise.

(c) The criminal history category for an armed career criminal is the greatest of:

(1) the criminal history category from Chapter Four, Part A (Criminal History), or sec. 4B1.1 (Career Offender) if applicable; or

(2) Category VI, if the defendant used or pos- sessed the firearm or ammunition in connection with a crime of violence or controlled substance offense, as defined in sec. 4B1.2(a), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. sec. 5845(a); or

(3) Category IV.

/7 In Castillo, the Court evaluated 18 U.S.C. sec. 924(c)(1), which provides that "[w]hoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime . . . be sentenced to imprisonment for five years." Sec- tion 924(c)(1) proceeds to specifically provide, however, that "if the firearm is a machinegun" a defendant will be sentenced to a mandatory sen- tence of thirty years imprisonment. The Court found that in this situation, "Congress intended the firearm type-related words it used in sec. 924(c)(1) to refer to an element of a separate, aggravated crime." Castillo, 530 U.S. at 131. Thus, whether a defendant used or carried a "machinegun" was a question of fact for the jury.