**Frank John DEFEO, Petitioner,**

v.

**UNITED STATES of America, Respondent.**

**No. 99 CIV 9094 RWS.**

United States District Court, S.D. New York.

July 25, 2001.

---

Carro, Velez, Carro & Mitchell, New York City, By Peter E. Quijano, of counsel, for Petitioner.

Honorable Mary Jo White, United States Attorney for the Southern District of New York, New York City, David Raymond Lewis, Assistant U.S. Attorney, of counsel, for Respondent.

## OPINION

SWEET, District Judge.

Petitioner Frank John DeFeo ("DeFeo") has moved to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on the grounds that the attorney who represented him in a Rule 33 motion was ineffective, and that the Honorable Mary Johnson Lowe [1] erred in making sentencing findings as to the amount of narcotics involved under the United States Sentencing Guidelines by a preponderance of the evidence, rather than beyond a reasonable doubt, pursuant to *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). For the reasons set forth below, the petition will be denied.

---

1. DeFeo's action was transferred to this Court after Judge Lowe died.

## Background

DeFeo has been in custody since his arrest on April 23, 1990. Indictment 2S 90 Cr. 250(MJL) charged DeFeo with (1) conspiring (a) to possess cocaine and heroin with intent to distribute; (b) conspiring to import heroin; and (c) conspiring to employ a minor in narcotics trafficking, in violation of 21 U.S.C. §§ 846 and 963; (2) employing a minor in the drug trade in violation of former 21 U.S.C. § 845b(a)(1), now codified at 21 U.S.C. § 861(a)(1); (3) possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(A)(1) and 841(B)(1)(C); (4) importation of more than 100 grams of heroin in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(A); and (5) possession with intent to distribute more than 100 grams of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). After a seven-day jury trial in May of 1991 and extensive post-trial motions before Judge Lowe, a judgment of conviction was entered against DeFeo on August 11, 1997.

DeFeo relieved his trial counsel, Frank A. Lopez, Esq. ("Lopez"), and hired Jorge DeJ. Guttlein, Esq. ("Guttlein") to represent him in post-conviction proceedings. After several adjournments, Guttlein filed DeFeo's first post-trial motion, on August 9, 1993. This Rule 33 motion sought a new trial on the grounds that DeFeo's trial counsel was constitutionally ineffective and the alleged perjury of a government witness, Carol Smith ("Smith"). Judge Lowe denied the motion, in an oral decision rendered on June 6, 1994.

DeFeo again retained new counsel, David I. Schoen, Esq. ("Schoen"), and filed a second motion for a new trial on April 28, 1995. The second Rule 33 motion alleged: (1) newly discovered evidence that Smith had perjured herself; (2) recent recantations by a cooperating witness, Marc Nemeth ("Nemeth"); (3) newly discovered evidence of alleged misconduct by the DEA; and (4) ineffectiveness of trial counsel.

While the motion was pending, Schoen applied *ex parte* for funds pursuant to the Criminal Justice Act ("CJA") to hire an investigator to conduct additional post-trial investigation into the allegations in the second Rule 33 motion. Judge Lowe directed Schoen to submit evidence in support of the request for funds, and both Schoen and DeFeo submitted affidavits seeking an *ex parte* hearing in response to that order.

The Rule 33 motion was denied in a written opinion and order dated December 27, 1996 and docketed on January 6, 1997. *United States v. DeFeo*, No. 2S 90 Cr. 250(MJL), 1997 WL 3259 (S.D.N.Y. Jan. 6, 1997). The request for CJA funds was denied on the same day in a separate four-page, single-spaced order which stated that "[t]he Court will not permit government funding for an exercise in repetition." (Pet.Br.Ex. J.) Judge Lowe proceeded to sentence DeFeo on June 6, 1997, more than seven years after DeFeo's arrest and more than six years after a jury convicted him on five felony narcotics trafficking counts.

Judge Lowe then made findings of fact as to the amount of narcotics involved in DeFeo's offense pursuant to the United States Sentencing Guidelines ("the Guidelines"). In accordance with the recommendation of the Probation Department, Judge Lowe found that DeFeo's conduct involved (1) 555 grams of heroin recovered from DeFeo and a coconspirator at JFK Airport; (2) four kilograms of cocaine that DeFeo stole in Florida; and (3) one kilogram of cocaine DeFeo stole in a Manhattan restaurant. Although there was evidence of significant additional quantities of drugs, Judge Lowe did not consider it in establishing the base offense level under

the United States Sentencing Guidelines (the "Guidelines").

Under section 2D1.1 of the Sentencing Guidelines Drug Equivalency Tables, the five kilograms of cocaine equaled one kilogram of heroin, which, when added to the 555 grams of heroin seized from DeFeo and his coconspirator, totaled the equivalent of 1.555 kilograms of heroin. This amount yielded a base offense level of 32 under U.S.S.G. § 2D1.1(c)(4).

Judge Lowe then increased the base offense level by one level because DeFeo had employed a minor, see U.S.S.G. § 2D1.2(a)(2), by four levels to reflect his role as an organizer of crime involving five or more persons, see U.S.S.G. § 3B1.1(a), and two levels for his obstruction of justice in threatening and attempting to bribe his coconspirator, see U.S.S.G. § 3C1.1 cmt n. 3(a). Based upon these enhancements, DeFeo's adjusted offense level was 39. As DeFeo had a criminal history category of IV,[2] his sentencing range was 360 months to life imprisonment. *DeFeo*, No. 90 Cr. 250, 1997 WL 3259, at *1.

DeFeo was sentenced to 360 months in prison, at the bottom of his applicable guideline range, and within the aforementioned statutory range that was applicable without taking into consideration amounts of narcotics that were not charged or found by the jury. This sentence was imposed concurrently on each of the five counts of conviction, plus a life term of supervised release. Judgment was entered on June 24, 1997 and docketed as Judgment # 97,1689 on August 11, 1997.

Still assisted by Schoen, DeFeo appealed to the Second Circuit, arguing that Judge Lowe had erred in denying the Rule 33 motion, in denying DeFeo's application for funds for an investigator, and in sentencing. The Second Circuit affirmed DeFeo's conviction by summary order dated May 20, 1998, *United States v. Defeo*, 1998 WL 391115 (2d Cir. May 20, 1998), and denied rehearing by order dated July 17, 1998. The mandate issued on July 29, 1998.

On August 23, 1999, Defeo filed a pro se § 2255 motion alleging that he had been denied constitutionally effective assistance of counsel. New counsel, Peter Quijano ("Quijano") filed a memorandum in support of the petition on April 28, 2000 and amended the petition to include an *Apprendi* claim by letter of August 1, 2000. The government filed a brief in opposition on February 26, 2000 and supplemented that filing with a letter dated February 28, 2000. After seeking numerous continuances, counsel for DeFeo filed a reply brief on May 25, 2001, whereupon the motion was deemed fully submitted.[3]

### Discussion

#### I. *Legal Standards Applicable to § 2255 Motions*

Section 2255 allows a convicted person being held in federal custody to petition the sentencing court to vacate, set aside or correct a sentence. Such a motion is properly filed if the petitioner claims that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; or (3) the sentence was in excess of the maximum

---

**2.** This criminal history category reflected the fact that DeFeo had two prior felony drug convictions.

**3.** DeFeo submitted a pro se supplement to his petition addressing the *Apprendi* claim on June 1, 2001, and the government filed a letter on the *Apprendi* question on July 12, 2001. Both of these submissions have been considered in light of the quickly evolving law of *Apprendi* although they were filed after the submission date of the motion.

authorized by law, or is otherwise subject to collateral attack. 28 U.S.C.A. § 2255.

■ No issue may be considered pursuant to § 2255 that has already been raised and considered on direct appeal. *See United States v. Perez,* 129 F.3d 255, 260 (2d Cir.1997), *cert. denied,* 525 U.S. 953, 119 S.Ct. 384, 142 L.Ed.2d 318 (1998). Similarly, a claim that could have been, but was not raised on direct appeal, is procedurally defaulted and therefore barred from review absent a showing of cause for the default and prejudice from the errors alleged, or "actual innocence." *See Underwood v. United States,* 166 F.3d 84, 87 (2d Cir.1999); *Douglas v. United States,* 13 F.3d 43, 46 (2d Cir.1993); *Campino v. United States,* 968 F.2d 187, 190 (2d Cir. 1992).

■ Ineffective assistance of counsel claims are a notable exception to this procedural default rule, and need not be brought on direct appeal. *See Billy–Eko v. United States,* 8 F.3d 111, 115 (2d Cir. 1993). However, a limited exception to this exception bars collateral review of an ineffectiveness claim where (1) the movant was represented by new appellate counsel on direct appeal, and (2) the claim is based solely on evidence in the trial record. *See Riascos–Prado v. U.S.,* 66 F.3d 30, 34 (2d Cir.1995) (*citing Billy–Eko v. United States,* 8 F.3d 111, 115 (2d Cir.1993)). The rationale for this rule is that while trial attorneys cannot be expected to argue their own ineffectiveness on appeal, newly retained attorneys have no such excuse. *See id.*

In 1996, section 2255 was amended to incorporate a one-year statute of limitations which requires the motion to be filed within one year of the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2255, Pub.L. 104–132, § 105 (1996).

Although the Second Circuit has held that a § 2254 habeas petitioner's conviction becomes "final" when the time for seeking certiorari expires, *see Valverde v. Stinson,* 224 F.3d 129, 132 (2d Cir.2000), it has not reached the issue with respect to § 2255 motions. *See Then v. United States,* 126 F.Supp.2d 727, 728 (S.D.N.Y. Jan.3, 2001 ); *White v. United States,* No. 99 Civ. 11809(SHS), 2000 WL 546426, at *1 (S.D.N.Y. May 4, 2000) (stating that "the Second Circuit has not opined" as to whether the statute of limitations for a section 2255 petition begins to run after a petitioner's time to seek certiorari has elapsed).

Sister circuits have split on this question. *Compare United States v. Torres,* 211 F.3d 836, 837 (4th Cir.2000) ("for purposes of § 2255, the conviction of a federal prisoner whose conviction is affirmed by this Court and who does not file a petition for certiorari becomes final on the date that this Court's mandate issues in his direct appeal"); *Gendron v. United States,* 154 F.3d 672, 674 (7th Cir.1998) (same),

*cert. denied,* 526 U.S. 1113, 119 S.Ct. 1758, 143 L.Ed.2d 790 (1999) *with Kapral v. United States,* 166 F.3d 565, 570–71 (3d Cir.1999) (when no certiorari petition is filed, judgment becomes final when the time for seeking certiorari review elapses).

Other courts within this District that have reached the question have been inclined to find that a conviction becomes final for purposes of § 2255(1) on the last day the petitioner could have filed a petition for certiorari in the Supreme Court. *See Then,* 126 F.Supp.2d at 730; *Bryant v. United States,* No. 99 Civ. 5736(JFK), 2000 WL 1818582 (S.D.N.Y. Dec.11, 2000); *Ramos v. United States,* No. 99 Civ. 5736(JFK), 2000 WL 1238891 (S.D.N.Y. Aug.29, 2000); *Lopez v. United States,* No. 98 Civ. 7969(JFK), 2000 WL 1229393 (S.D.N.Y. Aug.29, 2000); *Johnstone v. United States,* No. 98–CV–7369 (JG), 1999 WL 672946 (E.D.N.Y. Aug.25, 1999); *Andres v. United States,* No. 97 Civ. 3246(HB)(DFE), 1997 WL 778760, 1997 U.S. Dist. LEXIS 23531, at *1 (S.D.N.Y. Dec. 15, 1997). *But see Mohamed v. United States,* No. CV 99–6617(RR), 2000 WL 520963 (E.D.N.Y. Mar. 15, 2000) (conviction becomes final upon issuance of mandate by Second Circuit); *Beras v. United States,* No. CV 99–0400(RR), 1999 WL 754277 (E.D.N.Y. Aug. 19, 1999) (same).

DeFeo filed the ineffective assistance of counsel challenge pursuant to § 2255 on August 23, 1999, one year and twenty-five days after the Second Circuit issued its mandate on July 29, 1998. The time for filing a petition for certiorari to the Supreme Court lapsed on October 17, 1998, ninety days after the Second Circuit denied rehearing. *See* Supreme Court Rules 13.1, 13.3 (filing period for writ of certiorari is 90 days and runs from date of the denial of petition for rehearing rather than from the issuance date of the mandate). The § 2255 motion was therefore filed within one year of the date on which the time for filing a certiorari petition lapsed. Therefore, the determination of which standard applies to when DeFeo's conviction became final will determine whether his claim may be reviewed on the merits.

■ The Second Circuit has adopted the doctrine of equitable tolling for § 2255 motions in the "rare and exceptional circumstance[s]" where a petitioner can show that "extraordinary circumstances prevented him from filing his petition on time." *Smith v. McGinnis,* 208 F.3d 13, 17 (2d Cir.2000). Although lack of clear guidance on when one's conviction becomes final is not as "rare and exceptional" a circumstance as it may once have been prior to the passage of the byzantine Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. 104–132, 110 Stat. 1220 (Apr. 24, 1996), the spirit of equitable tolling nonetheless dictates that this Court apply the most generous standard to this question. In sum, DeFeo's conviction became final on the date his time to file a certiorari petition expired, and his § 2255 motion is timely under this standard.[4]

## II. *Ineffectiveness of Rule 33 Counsel*

DeFeo argues that Schoen, who represented him in post-trial motions and on direct appeal, was constitutionally ineffective because "[a]lthough it is doubtless true that Schoen expended considerable energy in pursuing petitioner's Rule 33 motion, . . . in the end, his efforts produced more light than heat." (Pet. Mem. at 10.) Specifically, DeFeo faults Schoen for failing (1) to obtain additional CJA

---

4. DeFeo's second claim accrued on June 26, 2000, the date the Supreme Court issued *Apprendi,* pursuant to 28 U.S.C. § 2255(3). He moved to amend his § 2255 petition to add the *Apprendi* claim on August 1, 2000, well within the one-year statute of limitations.

funds for an investigator; (2) to obtain affidavits from witnesses he had interviewed; (3) to prepare transcripts of relevant tape-recordings; or (4) to submit taped interviews in support of the Rule 33 motion. As Schoen represented DeFeo on direct appeal, his alleged ineffectiveness as Rule 33 counsel has, unsurprisingly, not previously been raised. Under the rule of *Billy–Eko,* 8 F.3d at 115, the issue has not been procedurally defaulted and may be considered on the merits here.

A defendant asserting ineffective assistance of counsel must show that (1) his counsel's performance was deficient and fell below the range of objectively reasonable representation; and (2) there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). There is a "strong presumption" that counsel's conduct was reasonable and that any challenged action "'might be considered sound trial strategy.'" *Id.,* 466 U.S. at 689, 104 S.Ct. at 2065 (*quoting Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. *See also United States v. Nersesian,* 824 F.2d 1294, 1321 (2d Cir.1987).

Every decision by an attorney that does not lead to a favorable resolution can be critiqued as insufficient in retrospect. Yet in practice, attorneys are faced with a myriad of choices that require tradeoffs given the necessarily limited amount of time and resources they have to prepare a case. As the Supreme Court has recognized, "[t]here are countless ways to provide effective assistance in any given case," and "even the best criminal defense attorneys would not defend a particular client

in the same way." *Strickland,* 466 U.S. at 696, 689, 104 S.Ct. 2052.

■ In the context of DeFeo's second Rule 33 motion, Schoen had to decide which leads to pursue and how much evidence he needed to amass in a relatively short period to convince Judge Lowe to schedule a hearing. In support of the motion, Schoen sought out Carol Smith; personally interviewed and made an offer of proof regarding the testimony of cooperating witness Nemeth, who admitted perjury; investigated prior Rule 33 counsel's failure to raise a claim of ineffective assistance of trial counsel; interviewed and submitted the affirmation of a witness with evidence of Smith's perjury; and tracked down information regarding an investigation against the DEA group assigned to DeFeo's case. Schoen documented his extensive investigation in a twenty-eight page affirmation, which he supplemented with a detailed, forty-five page reply affirmation. (Pet.Br.Exs.B, C.) Furthermore, Schoen submitted numerous additional communications addressing the Rule 33 motion and concomitant application for CJA investigative funds, which was also supported by a thirty-page affirmation. (*Id.* Ex. H.) He specifically addressed the fact that his witnesses would refuse to sign affidavits in one of those letters, and requested an *ex parte* hearing to resolve the problem. (Id. Ex. E at 2.)

Judge Lowe found that the evidence pertaining to Smith's alleged perjury and Lopez's alleged conflict of interest was not open for review because it was not "newly discovered," 1997 WL 3259, *6, *12; that Nemeth's recantation was not credible, *id.* at *8; and that, even if the evidence pertaining to the investigation of the DEA agents had been known to the government at trial and wrongfully withheld, DeFeo had failed to show that the outcome of his trial would have been different, *id.* at *9,

*10. Having denied two Rule 33 motions more than six years after DeFeo had been convicted, Judge Lowe denied the request for additional investigative funds as a useless "exercise in repetition." (Pet.Br.Ex. J.)

In short, Schoen went to heroic lengths to substantiate the claims in DeFeo's successive Rule 33 motion, but in the end was unsuccessful. As Schoen's investigation was objectively reasonable, *see Strickland,* 466 U.S. at 690–91, 104 S.Ct. at 2066, DeFeo has not demonstrated that Schoen's post-trial representation was constitutionally ineffective. The motion to vacate the sentence due to ineffective assistance of Rule 33 counsel is denied.

### III. *Apprendi*

DeFeo next contends that all of Judge Lowe's factual findings on the amount of narcotics at sentencing (and perhaps his leadership role) should have been determined by a reasonable doubt standard, rather than a preponderance of the evidence standard, pursuant to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). *Apprendi* held that "[o]ther than the fact of a prior conviction, any fact *that increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." 120 S.Ct. at 2362–63. Like DeFeo, defendants have urged courts to adopt the most expansive reading of *Apprendi*—that it requires *all* facts relevant to sentencing other than a prior conviction to be decided by a jury beyond a reasonable doubt. The government, not surprisingly, has suggested a correspondingly limited interpretation.

As a preliminary matter, no controlling authority exists on the question whether *Apprendi* is retroactively applicable on collateral review. Although the government

suggests that *Apprendi* does not present a "new rule of constitutional criminal procedure" that would qualify for retroactivity under the principles set forth in *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and its progeny, the petitioner has failed to address this issue. As DeFeo's claim fails on the merits in any event, the Court need not address the retroactivity issue.

Both the Supreme Court and the Second Circuit provide this Court guidance in addressing DeFeo's claim. First, the specific holding of *Apprendi* was that "any fact *that increases the penalty for a crime beyond the prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* (emphasis added). As such, *Apprendi* applies only where a fact found by a judge increases the otherwise applicable statutory maximum sentence.

The Second Circuit recently upheld this interpretation of *Apprendi* in the context of the Guidelines, which have traditionally been applied by judges under a preponderance standard. In *United States v. Garcia,* 240 F.3d 180 (2d Cir.2001), the Second Circuit observed that:

> We see nothing in the [Supreme] Court's holding in *Apprendi* or its explication of the holding that alters a sentencing judge's traditional authority to determine those facts relevant to selection of an appropriate sentence within the statutory maximum, an authority the Supreme Court has recognized both before the Sentencing Guidelines, and since their adoption.

*Id.* at 182 (citations omitted). The Court therefore "join[ed] the other nine circuits that have ruled on direct review that a guideline factor, unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum, may be determined by a sentencing judge and need not

be submitted to a jury." *Id.* at 182 (citations omitted). *See also United States v. White,* 240 F.3d 127 (2d Cir.2001) ("Where, as here, factual determinations were used to sentence the defendant to a sentence within the maximum allowed by statute, *Apprendi* is not controlling, and such determinations can be made by the court without violating the defendant's right to due process.").

■ DeFeo received a sentence that was within the applicable statutory maximum on each count of the indictment. Counts One, Three and Five involved the distribution of narcotics, and were each subject to statutory sentencing maxima of twenty years pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 960(b)(3). These maxima were increased to thirty years because the government had served DeFeo with a prior felony information prior to trial pursuant to 21 U.S.C. § 851. *See* 21 U.S.C. §§ 841(b)(1)(C), 960(b)(3).[5] Considering the prior felony, DeFeo faced a statutory sentencing range of ten years to life on Count Four, the charge of importing more than 100 grams of heroin. *See* 21 U.S.C. §§ 952(a), 960(a)(1), 960(b)(2)(A). The statutory sentencing range for Count Two, employing a minor in narcotics trafficking, was "twice the maximum punishment otherwise authorized" for narcotics trafficking. *See* former 21 U.S.C. § 845(b), now codified at 21 U.S.C. § 861. In other words, DeFeo faced a statutory maximum of sixty years of imprisonment on Count Four, double the maximum applicable to Counts One, Three and Five. *See* 21 U.S.C. § 861(b).

In short, before· the judge did any fact-finding, a sentence of between ten and thirty years would have been within the applicable statutory range on every count. The sentence actually imposed, 360 months (thirty years), is within this statutory maximum. As such, *Apprendi* is not implicated by the judge's findings of fact. It is worth noting that the jury found beyond a reasonable doubt that Counts Four and Five each involved more than 100 grams of heroin. (Tr. 829–33, 855.)

Finally, DeFeo contends that the amount of narcotics is an element of the crime that must be alleged in the indictment and decided by a jury beyond a reasonable doubt pursuant to *Apprendi.* Specifically, DeFeo argues that the only drug amounts that were properly considered at sentencing were the total of 200 grams the jury found him to have trafficked in Counts Four and Five. In addition, he suggests that the sentencing enhancements leading to a six level increase in the base offense level were imposed based upon statutes under which he was not indicted, in violation of *Apprendi.* Recalculating the sentence under these principles, DeFeo arrives at an offense level of 27 and a criminal history category of IV, yielding a sentence of 100–125 months, which would translate to a range of 120–125 months when the mandatory minima in Counts Four and Five are considered.

This argument appears to be foreclosed by *Garcia,* which · held that "a guideline factor, unrelated to a sentence above a statutory maximum or to a mandatory statutory minimum, may be determined by a sentencing judge and need not be submitted to a jury" under *Apprendi. Garcia,* 240 F.3d 180, 183. *See also White,* 240

---

**5.** The prior felony information gave notice that DeFeo had not one, but two prior felony drug convictions, which statutorily would have subjected DeFeo to "a mandatory term of life imprisonment without release." 21 U.S.C. § 841(b)(1)(A). However, because De-

Feo was mistakenly advised that the prior felony information would result in a statutory sentencing range of twenty years to life (applicable for defendants with one prior felony drug conviction), the government elected not to seek mandatory life imprisonment.

F.3d 127, 135 ("Where, as here, factual determinations were used to sentence the defendant to a sentence within the maximum allowed by statute, *Apprendi* is not controlling, and such determinations can be made by the court without violating the defendant's right to due process.").

Moreover, the Second Circuit recently affirmed this Guidelines rule in *United States v. McLeod,* 251 F.3d 78 (2d Cir. 2001), holding:

> We have ruled that *Apprendi* is inapplicable to Guidelines calculations that do not result in a sentence on a single count above the statutory maximum for that count. In addition, we have ruled that the "preponderance of the evidence" standard applies to determinations of relevant conduct for purposes of ascertaining the "total punishment".

*Id.* at 82 (*citing, inter alia, Garcia* and *White,* citations omitted). To hold that every fact pertinent to sentencing must be determined by a jury would eviscerate the Guidelines altogether and lead to interminable jury deliberations that would further choke already crowded dockets.

To the extent that the Second Circuit may address this issue in the forthcoming en banc opinion in *United States v. Thomas,* 248 F.3d 76 (2d Cir.2001) (ordering en banc review),[6] this Court cannot rely on law that does not yet exist in the face of the directly contradictory controlling authority cited above.

**6.** Oral argument before the en banc Court was heard on June 27, 2001. Two of the three questions for argument were: "(1) Does drug quantity under U.S.C. § 841, when it increases a defendant's sentence above a statutory maximum, constitute an element of the offense under the analysis used in [*Apprendi*], such that it must be alleged in the indictment? (2) Assuming that an indictment's failure to allege drug quantity is error, under

*Conclusion*

For the foregoing reasons, the motion is denied.

As DeFeo has failed to make a substantial showing of the denial of any constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253 (as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")); *see United States v. Perez,* 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States,* 107 F.3d 1011, 1016 (2d Cir.1997). I certify pursuant to the Prisoner Litigation Reform Act of 1996 ("PLRA"), 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

It is so ordered.

what circumstances is that error subject to harmless or plain error review?" 28 F.3d at 78. As the issues to be addressed are limited to sentences that exceed otherwise applicable statutory maxima based upon factfinding by a judge, *Thomas* is arguably not relevant to DeFeo's claim, which is that facts that increase a sentence above an otherwise applicable *Guideline* range must be determined by a jury beyond a reasonable doubt.