[No. B144240. Second Dist., Div. Five. Aug. 1, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL LENVELL THOMAS, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of all headings, part II. and parts III.A.-C.

COUNSEL

James M. Crawford, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, John R. Gorey and Michelle M. Paffile, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TURNER, P. J.**—Defendant, Michael Lenvell Thomas, appeals from his conviction for evading an officer with willful disregard for the safety of persons or property. (Veh. Code, § 2800.2, subd. (a).) Defendant was also found to have served two prior prison terms. (Pen. Code,[1] § 667.5, subd. (b).) Defense counsel waived defendant's right to a jury trial on the prior prison term allegations. Defendant was not asked to nor did he waive his right to a jury trial on prior prison term allegations. After the court trial on the prior prison term allegations, the United States Supreme Court issued its opinion in *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 [120 S.Ct. 2348, 2362-2363, 147 L.Ed.2d 435], which held that, other than the fact of prior conviction, sentencing enhancements must be determined by a jury. In the published portion of this opinion, we discuss whether the Fourteenth Amendment due process clause guarantees an accused the right to a jury trial on section 667.5 prior prison term allegations.

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  *

Defendant argues that he was denied a right to a jury trial regarding the two prior prison term allegations. He reaches this conclusion because the trial court failed to obtain his express personal waiver of his jury trial right. Through defense counsel, defendant agreed to bifurcate the trial on his prior convictions. Prior to the commencement of trial, the following occurred: "The Court: We also have the priors that are alleged, and it's my understanding that it's the defendant's desire to bifurcate the priors; is that correct? [¶] [Defense Counsel]: Can I have one moment, Your Honor. [¶] The Court: Yes [¶] (Sotto voce conference between [defense counsel] and the defendant.) [¶] [Defense Counsel]: Yes, Your Honor. That is *his* wish." (Italics added.) The jury was excused after it rendered its guilty verdict on the evading an officer charge. Thereafter, the trial court noted, "With reference to the proof of the priors, I believe in chambers we had indicated that there was going to be a jury waiver as far as their proof was concerned." Defense counsel answered, "Yes."

■ Defendant argues that he has been denied his right to a jury trial because he never personally agreed to allow the trial judge to decide the issue of validity of the two prior prison term allegations. The first question is whether there has been a state constitutional violation. That issue is controlled by the decision of the California Supreme Court in *People v. Vera* (1997) 15 Cal.4th 269, 277 [62 Cal.Rptr.2d 754, 934 P.2d 1279]. In *Vera* the Supreme Court held: "When the defendant seeks to bifurcate the determination of the truth of the prior conviction allegation from determination of the defendant's guilt of the charged crimes, however, only the statutory right to jury trial is implicated in the trial of the sentencing allegations. Since there is no constitutional right to have the jury determine the truth of a prior conviction allegation [citation], it follows that the failure to obtain an express, personal waiver of the right to jury trial of prior conviction allegations does not constitute a violation of the state constitutional mandate." (*Ibid.*) In *People v. Epps* (2001) 25 Cal.4th 19, 23 [104 Cal.Rptr.2d 572, 18 P.3d 2], the California Supreme Court held: "The right, if any, to a jury trial of prior conviction allegations derives from sections 1025 and 1158, not from the state or federal Constitution. (*Apprendi v. New Jersey*[, *supra*,] 530 U.S. [at p.] __ . . . ; [*People v.*] *Wiley* [(1995)] 9 Cal.4th [580,] 585 [38 Cal.Rptr.2d 347,889 P.2d 541].)" No state constitutional violation has occurred because defendant failed to personally waive his statutory jury trial right on the prior prison term allegations.

■ The second question is whether the failure to secure a personal agreement on defendant's part to have the trial judge determine the truth of

*See footnote, *ante*, page 212.

the two prior prison term allegations was violative of the Sixth and Fourteenth Amendments jury trial right. Defendant's argument that the failure to have secured a personal waiver of his jury trial right was federal constitutional error is premised upon language in *Apprendi v. New Jersey, supra,* 530 U.S. at page 490 [120 S.Ct. at pages 2362-2363]. Defendant relies upon the following language in *Apprendi:* "Other than the *fact of a prior conviction,* any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Ibid.,* italics added.) A year prior to *Apprendi,* the Supreme Court held that as to "any fact (other than prior conviction)" that increased the maximum penalty for the crime charged, the Fifth Amendment due process clause required a jury trial and proof beyond a reasonable doubt. (*Jones v. United States* (1999) 526 U.S. 227, 243, fn. 6 [119 S.Ct. 1215, 1224, 143 L.Ed.2d 311].) Defendant accepts that if the two section 667.5 enhancements involved merely "prior convictions," there would be no federal jury trial right and no corresponding duty to secure a personal waiver of that privilege. Recognizing the controlling nature of *Apprendi,* defendant reasons that a prior prison term allegation involves more elements than the mere "fact of a prior conviction." Defendant correctly notes that a section 667.5 enhancement requires more than a mere conviction. The accused must have served a prison term as defined in the statute. (*People v. Lopez* (1985) 163 Cal.App.3d 946, 951 [210 Cal.Rptr. 56]; 3 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Punishment, § 335, p. 432.) Therefore, defendant contends that all of the other elements of a prior prison term enhancement beyond the mere fact of the conviction are subject to a jury trial right under the due process clause of the Fourteenth Amendment. As a corollary of that argument, defendant argues that since he never personally waived his jury trial right, he is entitled to a new trial on the two prior prison term enhancement allegations. For the following reasons, we respectfully disagree.

Defendant's narrow reading of the words "fact of a prior conviction" in *Apprendi* is without merit because his analysis takes that language out of its context. In *Almendarez-Torres v. United States* (1998) 523 U.S. 224, 226, 228 [118 S.Ct. 1219, 1222, 1223, 140 L.Ed.2d 350], a decision which preceded *Apprendi,* the United States Supreme Court examined the due process ramifications of a sentence enhanced in part by reason of a prior conviction. In *Almendarez-Torres,* the accused was alleged to be an alien who had illegally returned to the United States after having previously been deported following conviction of an "aggravated felony." Accordingly, the accused was subject to an enhanced sentence of up to 20 years in federal

prison pursuant to title 8 United States Code section 1326(b)(2).[2] Speaking for the majority, Associate Justice Stephen Breyer framed the question to be

[2]Title 8 United States Code section 1326 states in relevant part: "(a) In general [¶] Subject to subsection (b) of this section, any alien who— [¶] (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act, shall be fined under title 18, or imprisoned not more than 2 years, or both. [¶] (b) Criminal penalties for reentry of certain removed aliens [¶] Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection— [¶] . . . [¶] (2) whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both . . . ."

Title 8 United States Code section 1101(a)(43) defines the term "aggravated felony" as follows: "(43) The term 'aggravated felony' means— [¶] (A) murder, rape, or sexual abuse of a minor; [¶] (B) illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18); [¶] (C) illicit trafficking in firearms or destructive devices (as defined in section 921 of Title 18) or in explosive materials (as defined in section 841(c) of that title); [¶] (D) an offense described in section 1956 of Title 18 (relating to laundering of monetary instruments) or section 1957 of that title (relating to engaging in monetary transactions in property derived from specific unlawful activity) if the amount of the funds exceeded $10,000; [¶] (E) an offense described in— [¶] (i) section 842(h) or (i) of Title 18, or section 844(d), (e), (f), (g), (h), or (i) of that title (relating to explosive materials offenses); [¶] (ii) section 922(g)(1), (2), (3), (4), or (5), (j), (n), (o), (p), or (r) or 924(b) or (h) of Title 18 (relating to firearms offenses); or [¶] (iii) section 5861 of Title 26 (relating to firearms offenses); [¶] (F) a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year; [¶] (G) a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment at least one year; [¶] (H) an offense described in section 875, 876, 877, or 1202 of Title 18 (relating to the demand for or receipt of ransom); [¶] (I) an offense described in section 2251, 2251A, or 2252 of Title 18 (relating to child pornography); [¶] (J) an offense described in section 1962 of Title 18 (relating to racketeer influenced corrupt organizations), or an offense described in section 1084 (if it is a second or subsequent offense) or 1955 of that title (relating to gambling offenses), for which a sentence of one year imprisonment or more may be imposed; [¶] (K) an offense that— [¶] (i) relates to the owning, controlling, managing, or supervising of a prostitution business; [¶] (ii) is described in section 2421, 2422, or 2423 of Title 18 (relating to transportation for the purpose of prostitution) if committed for commercial advantage; or [¶] (iii) is described in section 1581, 1582, 1583, 1584, 1585, or 1588 of Title 18 (relating to peonage, slavery, and involuntary servitude); [¶] (L) an offense described in— [¶] (i) section 793 (relating to gathering or transmitting national defense information), 798 (relating to disclosure of classified information), 2153 (relating to sabotage) or 2381 or 2382 (relating to treason) of Title 18; [¶] (ii) section 421 of Title 50 (relating to protecting the identity of undercover intelligence agents); or [¶] (iii) section 421 of Title 50 (relating to protecting the identity of undercover agents); [¶] (M) an offense that— [¶] (i) involves fraud or deceit in which the loss to the victim or victims exceeds $10,000; or [¶] (ii) is described in section 7201 of Title 26 (relating to tax evasion) in which the revenue loss to the Government exceeds $10,000; [¶] (N) an offense described in paragraph (1)(A) or (2) of section 1324(a) of this title (relating to alien

decided in *Almendarez-Torres* as follows: "The question before us is whether this latter provision defines a separate crime or simply authorizes an enhanced penalty. If the former, *i.e.*, if it constitutes a separate crime, then the Government must write an indictment that mentions the additional element, namely, a prior aggravated felony conviction. If the latter, *i.e.*, if the provision simply authorizes an enhanced sentence when an offender also has an earlier conviction, then the indictment need not mention that fact, for the fact of an earlier conviction is not an element of the present crime. [¶] We conclude that the subsection is a penalty provision, which simply authorizes a court to increase the sentence for a recidivist. It does not define a separate crime. Consequently, neither the statute nor the Constitution requires the Government to charge the factor that it mentions, an earlier conviction, in the indictment." (*Almendarez-Torres v. United States, supra*, 523 U.S. at pp. 226-227 [118 S.Ct. at p. 1222].)

In *Almendarez-Torres*, the Supreme Court rejected the defendant's argument that the prior conviction constituted an element of the crime which the Fifth Amendment due process clause required to be alleged in the indictment. Justice Breyer stated: "[T]he sentencing factor at issue here—recidivism—is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence. See, *e.g., Parke* v. *Raley*, 506 U.S. 20, 26 [113 S.Ct. 517, 521-522, 121 L.Ed.2d 391] (1992) (Recidivism laws

smuggling), except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter [¶] (O) an offense described in section 1325(a) or 1326 of this title committed by an alien who was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph; [¶] (P) an offense (i) which either is falsely making, forging, counterfeiting, mutilating, or altering a passport or instrument in violation of section 1543 of Title 18, or is described in section 1546(a) of such title (relating to document fraud) and (ii) for which the term of imprisonment is at least 12 months, except in the case of a first offense for which the alien has affirmatively shown that the alien committed the offense for the purpose of assisting, abetting, or aiding only the alien's spouse, child, or parent (and no other individual) to violate a provision of this chapter; [¶] (Q) an offense relating to a failure to appear by a defendant for service of sentence if the underlying offense is punishable by imprisonment for a term of 5 years or more; [¶] (R) an offense relating to commercial bribery, counterfeiting, forgery, or trafficking in vehicles the identification numbers of which have been altered for which the term of imprisonment is at least one year; [¶] (S) an offense relating to obstruction of justice, perjury or subornation of perjury, or bribery of a witness, for which the term of imprisonment is at least one year; [¶] (T) an offense relating to a failure to appear before a court pursuant to a court order to answer to or dispose of a charge of a felony for which a sentence of 2 years' imprisonment or more may be imposed; and [¶] (U) an attempt or conspiracy to commit an offense described in this paragraph. [¶] The term applies to an offense described in this paragraph whether in violation of Federal or State law and applies to such an offense in violation of the law of a foreign country for which the term of imprisonment was completed within the previous 15 years. Notwithstanding any other provision of law (including any effective date), the term applies regardless of whether the conviction was entered before, on, or after September 30, 1996." (Fns. omitted.)

'have a long tradition in this country that dates back to colonial times' and currently are in effect in all 50 States); U.S. Dept. of Justice, Office of Justice Programs, Statutes Requiring the Use of Criminal History Record Information 17-41 (June 1991) (50-state survey); USSG §§ 4A1.1, 4A1.2 (Nov. 1997) (requiring sentencing court to consider defendant's prior record in every case). Consistent with this tradition, the Court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was 'necessary to bring the case within the statute.' *Graham v. West Virginia*, 224 U.S. 616, 624 [32 S.Ct. 583, 585-586, 56 L.Ed. 917] (1912). That conclusion followed, the Court said, from *'the distinct nature of the issue*,' and the fact that recidivism 'does not relate to the commission of the offense, *but goes to the punishment only*, and therefore . . . may be subsequently decided.' *Id.*, at 629 [32 S.Ct. at 588] (emphasis added). The Court has not deviated from this view. See *Oyler* v. *Boles*, 368 U.S. 448, 452 [82 S.Ct. 501, 503-504, 7 L.Ed.2d 446] (1962) (due process does not require advance notice that trial for substantive offense will be followed by accusation that the defendant is a habitual offender); *Parke*, *supra*, at 27 [113 S.Ct. at 522] ('[A] charge under a recidivism statute does not state a separate offense, but goes to punishment only'). And, as we said before, . . . , Congress, reflecting this tradition, has never, to our knowledge, made a defendant's recidivism an element of an offense where the conduct proscribed is otherwise unlawful. See *United States* v. *Jackson*, 824 F. 2d 21, 25, and n. 6 (CADC 1987) (opinion of R. Ginsburg, J.) (referring to fact that few, if any, federal statutes make 'prior criminal convictions . . . elements of another criminal offense to be proved before the jury'). Although these precedents do not foreclose petitioner's claim (because, for example, the state statute at issue in *Graham* and *Oyler* provided for a jury determination of disputed prior convictions), to hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as 'go[ing] to the punishment only.' *Graham*, *supra*, at 629 [32 S.Ct. at 587-588]." (*Almendarez-Torres v. United States, supra*, 523 U.S. at pp. 243-244 [118 S.Ct. at pp. 1230-1231].)

*Almendarez-Torres* preceded *Apprendi*. In *Apprendi*, the court decided whether the due process clause of the Fourteenth Amendment required that the factual determination as to whether the defendant's mens rea was to intimidate the victim based upon " 'race, color, gender, handicapped, religion, sexual orientation or ethnicity' " be made utilizing the beyond a reasonable doubt standard by a jury. (*Apprendi v. New Jersey, supra*, 530 U.S. at p. 469 [120 S.Ct. at p. 2351].) The *Apprendi* majority held the accused's mental state, which resulted in an enhanced sentence, in committing the charged crime was an element of the offense that required juror

evaluation utilizing the beyond a reasonable doubt standard. (*Id.* at p. 490 [120 S.Ct. at pp. 2362-2363].) The *Apprendi* majority distinguished *Almendarez-Torres* in part as follows: "[A]s *Jones* [*v. United States, supra,* 526 U.S. at pages 248-249 [119 S.Ct. at pages 1226-1227]] made crystal clear, . . . , our conclusion in *Almendarez-Torres* turned heavily upon the fact that the additional sentence to which the defendant was subject was 'the prior commission of a serious crime.' 523 U.S., at 230 [118 S.Ct. at 1224]; see also *id.,* at 243 [118 S.Ct. at 1230] (explaining that 'recidivism . . . is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence'); *id.,* at 244 [118 S.Ct. at 1231] (emphasizing 'the fact that recidivism "does not relate to the commission of the offense . . ."'); *Jones,* 526 U.S., at 249-250, n. 10 [119 S.Ct. at 1227] ('The majority and the dissenters in *Almendarez-Torres* disagreed over the legitimacy of the Court's decision to restrict its holding to recidivism, but both sides agreed that the Court had done just that'). Both the certainty that procedural safeguards attached to any 'fact' of prior conviction, and the reality that Almendarez-Torres did not challenge the accuracy of that 'fact' in his case, mitigated the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 488 [120 S.Ct. at pp. 2361-2362], fn. omitted.)

The *Apprendi* majority recognized that its holding could be construed as being in conflict with *Almendarez-Torres.* Nonetheless, the majority emphasize that *Almendarez-Torres* remained the law of land when it noted: "Even though it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, *Apprendi* does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence." (*Apprendi v. New Jersey, supra,* 530 U.S. at pp. 489-490 [120 S.Ct. at p. 2362], fn. omitted.) It was in this context that the *Apprendi* majority then, in the very next paragraph, utilized the "[o]ther than the fact of a prior conviction" language which requires that a fact which increases the sentence beyond the statutory maximum for an offense be submitted to a jury for proof beyond a reasonable doubt findings. (*Id.* at p. 490 [120 S.Ct. at p. 2362].)

Of further consequence is the manner in which United States Supreme Court has described its holding in *Almendarez-Torres.* In *Jones v. United States, supra,* 526 U.S. at page 249 [119 S.Ct. at page 2227], a case decided before *Apprendi,* the United States Supreme Court emphasized that its prior

decision in *Almendarez-Torres* was premised upon the distinctive issue of recidivism as distinguished from an element of an offense and other matters which are entitled to full due process treatment. In *Jones*, the Supreme Court described *Almendarez-Torres* as involving "the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in indictment." (*Jones v. United States, supra,* 526 U.S. at p. 249 [119 S.Ct. at p. 2227].) In *Castillo v. United States* (2000) 530 U.S. 120, 126 [120 S.Ct. 2090, 2094, 147 L.Ed.2d 94], decided several weeks before *Apprendi*, the Supreme Court confronted the question of whether an enhanced sentence for machine gun use during a crime of violence created a separate offense or was merely a sentencing factor. In *Castillo*, Justice Breyer described the issue before the court like this: "In this case we once again decide whether words in a federal criminal statute create offense elements (determined by a jury) or sentencing factors (determined by a judge). See *Jones v. United States*, [*supra,*] 526 U.S. 227 . . . ; *Almendarez-Torres v. United States*, [*supra,*] 523 U.S. 224 . . . ." (*Castillo v. United States, supra,* 530 U.S. at p. 121 [120 S.Ct. at p. 2091].) Further, in *Castillo*, Justice Breyer described the *Almendarez-Torres* opinion as one as involving issues of recidivism and noted, "[R]ecidivism 'is as typical a sentencing factor as one might imagine.'" (*Castillo v. United States, supra,* 530 U.S. at p. 126 [120 S.Ct. at p. 2094].)

Other courts in evaluating this question have reached several pertinent conclusions. Other courts have uniformly concluded that *Apprendi* did not overrule *Almendarez-Torres*. (*U.S. v. Skidmore* (7th Cir. 2001) 254 F.3d 635, 642; *U.S. v. Moreno-Arredondo* (5th Cir. 2001) 255 F.3d. 198, 203; *U.S. v. Arellano-Rivera* (9th Cir. 2001) 244 F.3d 1119, 1126; *U.S. v. Brough* (7th Cir. 2001) 243 F.3d. 1078, 1081; *U.S. v. Chapa-Garza* (5th Cir. 2001) 243 F.3d 921, 928; *U.S. v. Quintana-Torres* (9th Cir. 2000) 235 F.3d 1197, 1200; *U.S. v. Fresnares-Torres* (9th Cir. 2000) 235 F.3d 481, 482; *U.S. v. Gatewood* (6th Cir. 2000) 230 F.3d 186, 192; *U.S. v. Salery* (M.D.Ala. 2000) 119 F.Supp.2d 1268, 1273; *U.S. v. Powell* (E.D.Pa. 2000) 109 F.Supp.2d 381, 383-384; *McGregor v. State* (Fla.Dist.Ct.App. 2001) 789 So.2d 976, 978; *State v. Cullen* (Mo.Ct.App. 2001) 39 S.W.3d 899, 905; *People v. Dillard* (2001) 319 Ill.App.3d 102 [253 Ill.Dec 411, 745 N.E.2d 185, 191]; see *U.S. v. Watts* (7th Cir. 2001) 256 F.3d 630.) Further, other courts have construed *Apprendi* as requiring a jury trial except as to matters relating to "recidivism." Courts have not described *Apprendi* as requiring jury trials on matters other than the precise "fact" of a prior conviction. Rather, courts have held that no jury trial right exists on matters involving the more broadly framed issue of "recidivism." (*U.S. v. Skidmore, supra,* 254 F.3d at p. 642; *U.S. v. Brough, supra,* 243 F.3d at pp. 1079-1081; *U.S. v. Rogers* (11th Cir. 2000) 228 F.3d 1318, 1324; *People v. Childress* (2001) 321 Ill.App.3d

13 [254 Ill.Dec 26, 746 N.E.2d 783, 796]; *Wright v. State* (Fla.Dist.Ct.App. 2001) 780 So.2d 216, 216-217; *People v. Ramos* (2000) 318 Ill.App.3d 181 [252 Ill.Dec 225, 742 N.E.2d 763, 774]; *People v. Ware* (Ill.App.Ct. 2001) 751 N.E.2d 81, 90.) Appellate courts have held that *Apprendi* does not require full due process treatment to recidivism allegations which involved elements merely beyond the fact of conviction itself. (*U.S. v. Palomino-Rivera* (7th Cir. 2001) 258 F.3d 656, 661 [*Apprendi* does not apply to prior conviction allegation pursuant to 8 U.S.C. § 1326] (see fn. 2, *ante*)]; *U.S. v. Johnstone* (1st Cir. 2001) 251 F.3d 281, 286, fn. 6 ["Moreover, by its express terms, *Apprendi* concerns only sentencing facts '[o]ther than the fact of a prior conviction . . .' 530 U.S. at 490 [120 S.Ct. at 2362]. Here, Johnstone's maximum sentence for his offense increased to twenty years solely because of his deportation following his prior conviction in Colorado. Therefore, although we need not decide this issue today, we doubt that *Apprendi* applies to Johnstone's case for the additional reason that the increase in his maximum sentence was due to a prior conviction. See *United States v. Pacheco-Zepeda*, 234 F.3d 411, 415 (9th Cir. 2000)"]; *Wright v. State, supra,* 780 So.2d at p. 217 ["Nothing in *Apprendi* overrules the Florida Supreme Court's holding in *Eutsey v. State*, 383 So.2d 219 (Fla. 1980) that the determination that a defendant could be sentenced as an habitual felony offender was independent of the question of guilt in the underlying substantive offense and did not require the full panoply of rights afforded a defendant in the trial of the offense."]; *Jones v. Maryland* (2001) 138 Md.App. 12 [769 A.2d 1015, 1023] ["*Apprendi* does not require a jury determination of prior convictions or incarceration resulting from those convictions."].) Further, under the New York habitual offender law a qualifying prior conviction must be one where the defendant served more than one year in prison. The Court of Appeals of New York has held that under *Apprendi* there is no jury trial right to determine whether that state's habitual offender law applies to the accused. (*People v. Rosen* (2001) 96 N.Y.2d 329 [752 N.E.2d 844, 846]; *People v. Conyers* (2001) 727 N.Y.S.2d 545, 546 [2001 WL 812333].) Finally, the Florida Supreme Court has recently held that the question of whether a recidivist committed a new offense within three years of being released from a state correctional facility was not an element of a sentencing enhancement that had to be submitted to the jury under *Apprendi*. (*McGregor v. State, supra,* 789 So.2d at p. 977; *Parker v. State* (Fla. 2001) 790 So.2d 1033, 1035; *Robinson v. State* (Fla. 2001) 793 So.2d 891, 892.)

With the foregoing legal analysis in mind, we reach the following conclusions. In terms of recidivism findings that enhance a sentence and are

unrelated to the elements of a crime, *Almendarez-Torres* is the controlling due process authority. *Almendarez-Torres* does not require full due process treatment of an issue of recidivism which enhances a sentence and is unrelated to an element of a crime. *Apprendi* did not overrule *Almendarez-Torres*. The language relied upon by defendant in *Apprendi*, "[o]ther than the fact of a prior conviction," refers broadly to recidivism enhancements which include section 667.5 prior prison term allegations. Notably, the recidivism enhancement in *Almendarez-Torres* had elements apart from the mere fact of a prior conviction. As noted previously, the prior conviction had to involve an "aggravated felony" which occurred before the alien accused's removal from this country. (See fn. 2, *ante*.) As has been noted, the term "aggravated felony" in *Almendarez-Torres* involved the commission of specific enumerated felonies, not merely the "fact of a prior conviction" as that term was utilized in *Apprendi*. Also, the same reliability factors identified in *Apprendi* are applicable here. (*Apprendi v. New Jersey, supra,* 530 U.S. at p. 488 [120 S.Ct. at pp. 2361-2362].) The evidence in the present case consisted of documents which, without dispute, demonstrated defendant had on two separate occasions been sentenced to and completed prison terms. The written evidence which included abstracts of judgment, fingerprint records, and Department of Corrections documents have the constitutional requisite level of reliability so as to meet any pertinent due process concerns. Therefore, *Apprendi* does not stand for the proposition that full due process treatment should have been accorded to the two prior prison term enhancement allegations. No federal constitutional violation occurred because defense counsel waived defendant's state statutory right to a jury trial.

The judgment is affirmed.

Grignon, J., and Willhite, J.,* concurred.

On August 8, 2001, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied October 31, 2001.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.