73 Cal.Rptr.3d 595 (2008)
161 Cal.App.4th 68
The PEOPLE, Plaintiff and Respondent,
v.
Richard ABERCROMBIE, Defendant and Appellant.
No. C051865.
Court of Appeal of California, Third District.
March 24, 2008.
*596 Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Mary Jo Graves and Michael P. Farrell, Assistant Attorneys General, and Stan Cross and Susan Ranking Bunting, Deputy Attorneys General, for Plaintiff and Respondent.
Certified for Partial Publication.[*]

OPINION ON REHEARING
BUTZ, J.
Defendant Richard Abercrombie sexually abused his stepdaughter on several occasions over a six-month period. A jury convicted him of two counts of lewd conduct with a child (Pen.Code, § 288, subd. (a)counts one and two),[1] one count of unlawful sexual intercourse with a minor (§ 261.5, subd. (d)count three), two counts of oral copulation with a minor (§ 288a, subd. (b)(2)counts four and five), and one count of digital penetration of a minor (§ 289, subd. (i)count six).
Defendant appeals from a judgment sentencing him to state prison for an aggregate term of 13 years.[2] He claims that the victim's testimony against him was inherently improbable and, therefore, not sufficient to sustain a verdict of guilty beyond a reasonable doubt. He also contends that imposition of the upper term sentence for count one violated his federal due process and jury trial rights under Cunningham v. California (2007) 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham), Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely), and Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Apprendi). We shall reject these arguments on rehearing and affirm.

FACTUAL BACKGROUND
KM. was 13 years old in March of 2003 when defendant moved in with her mother *597 Viola, her younger sister, and her. The house that they shared was a four-bedroom, 1,300-square-foot, single-family home. At various times between March 2003 and October 2004, Viola's son lived there as well as Viola's mother and defendant's mother. Viola and defendant were married in June 2003.
K.M. has been diagnosed with Asperger's Syndrome, and is in special education classes at school. Her social interactions, communication, imaginative thought, and ability to express emotions are impaired by her condition.
In April of 2004, defendant asked K.M. to go with him into the kitchen of their home. Everyone else in the house was asleep. When she got to the kitchen, he asked her to orally copulate him, which she did. Defendant instructed her not to tell anyone, because it would hurt her mom.
K.M. testified there were two other times defendant put his penis in her mouth. Once, when no one else was home, he had her orally copulate him while he stood by the front door, watching for anyone to come home. She stopped when someone came to the door. The second time, when everyone else in the house was running errands, defendant gave her $5 to orally copulate him.
In May of 2004, defendant woke K.M. in the early morning and touched her vagina through her panties and asked her to "do it" with him. She put her pants on, told him to leave and tried to escape, but he blocked the door. She pushed him, and he pushed her back, causing her to cry. This awakened defendant's mother, who was sleeping in a nearby room. Defendant's mother told him to "leave [her] alone" and he "back[ed] off."
K.M. also testified about three separate occasions on which defendant had sexual intercourse with her. The first time was during the afternoon when everyone was out except her younger sister. Defendant first directed her sister to stay in her room. He then took K.M. into the bathroom off the master bedroom. Defendant inserted his fingers into K.M.'s vagina and then unsuccessfully tried to insert his penis. He then used hair grease to lubricate himself and managed to penetrate her about an inch.
The second incident also occurred in the master bathroom and involved defendant using hair grease to lubricate himself. K.M.'s mother was "outside with the dogs" and her younger sister was in her room. On this occasion, defendant accidentally penetrated her anus, causing her to scream and storm out of the room.
The third instance of sexual intercourse occurred in the kitchen. K.M.'s mother was running an errand and her sister was at a friend's house when defendant told her to go with him into the kitchen and made her bend over. His penis partially penetrated her, before he let her go.
On another occasion during Halloween, defendant awakened K.M. and had her put on her witch costume. Before she put it on, he put his fingers in her vagina.
K.M. testified about two instances when defendant touched her breasts, once with his hands and once with his mouth. Both instances occurred when she was alone with him in the afternoon, either home sick from school or after school and before her mother got home from work.
K.M. testified that she told her mother about defendant's molestations, but Viola responded that the allegations were very serious and she should not tell anyone because defendant could be sent to jail for life.
On December 9, 2004, defendant offered K.M. money to do sexual things with him. The next day K.M.'s teacher gave the students *598 an assignment to write about an obstacle that they had overcome in their life. In her paper, K.M. wrote about the "child sexual harassment" perpetrated by defendant. After reading K.M.'s paper, her teacher called Child Protective Services (CPS). K.M. was then interviewed by police, and defendant was arrested.
In the weeks after CPS became involved, K.M. related the facts of all the incidents about which she testified to other people. She also kept a private diary recording her thoughts and descriptions of defendant's sexual molestations in the months in which they occurred.
K.M. admitted that she had watched pornographic videos, which depicted many of the acts she described in her testimony. However, all of the actors in the videos were adults and K.M. insisted that she did not base her testimony on what she saw in the videos, but on what defendant had actually done to her.
Pediatric Nurse Practitioner Cathy Boyle testified that there were some abnormalities to K.M.'s hymen but she could not specifically trace it to sexual abuse. However, she also testified that 60 to 80 percent of children who have been sexually abused have normal exams.

Defense
Defendant did not testify. Viola, defendant's wife and K.M.'s mother, testified that K.M. resented defendant because he made her do chores and was a stricter parent than she was. She also denied K.M.'s allegation that she was told about the molestations before defendant was charged. Viola remained married to defendant and regularly visited him in jail following his arrest.
The defense attempted to impeach K.M.'s credibility by pointing out inconsistencies in the dates on which the reported molestations occurred.

DISCUSSION

I. Sufficiency of the Evidence[**]

II. Sentencing
The trial court sentenced defendant to the upper term for count one because he was "on parole when the crime was committed." Citing Cunningham, Blakely and Apprendi, defendant contends that because his parole status was not submitted to a jury, the imposition of the upper term based on this fact violated his constitutional right to a jury trial.
In our original opinion in this case (Abercrombie I), we found that defendant's parole status was a recidivism factor arising from the fact of a prior conviction as that term is used in Blakely and Cunningham, and therefore did not require a jury determination. Defendant petitioned for rehearing based upon a then-published decision by the Sixth Appellate District that disagreed with our view. (People v. Guess (2007) 150 Cal.App.4th 148, 59 Cal. Rptr.3d 80, review granted, June 27, 2007, S152877 (Guess).) We granted defendant's rehearing petition and requested supplemental briefing on the applicability of Guess to this case. After rehearing was granted, however, Guess was rendered uncitable as authority by the California Supreme Court's grant of review. (Cal. Rules of Court, rules 8.1100(e)(1), 8.1115(a).)[4].
*599 In the meantime, the Court of Appeal for the Second Appellate District, Division 6 in People v. Yim (2007) 152 Cal.App.4th 366, 371, 60 Cal.Rptr.3d 887 (Yim), agreed with (and cited) our holding in Abercrombie I, that parole status fell within the recidivism exception. Yim is now final.
We now concur with the appellate court in Yim and reaffirm our original conclusion in Abercrombie I that a trial court's reliance on a defendant's poor performance on parole as an aggravating sentencing factor falls within the recidivism exception to Cunningham/Blakely and does not violate defendant's jury trial guarantee.
In Cunningham, supra, 549 U.S. ___, 127 S.Ct. 856, 166 L.Ed.2d 856, the United States Supreme Court, relying on its decisions in Blakely, supra, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 and Apprendi supra, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, stated that, "Except for a prior conviction, `any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" (Cunningham, at p. ___, 127 S.Ct. at p. 868, 166 L.Ed.2d at p. 873, italics added; see also Black II, supra, 41 Cal.4th at p. 809, 62 Cal.Rptr.3d 569, 161 P.3d 1130; Sandoval, supra, 41 Cal.4th at p. 835, 62 Cal.Rptr.3d 588, 161 P.3d 1146.)
The "prior conviction" exception has its origins in the high court's decision in Almendarez-Torres v. United States (1998) 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (Almendarez-Torres). In that case, the court stated that recidivism does not need to be alleged or proved to increase the base sentence because recidivism was "as typical a sentencing factor as one might imagine." (Id. at p. 230, 118 S.Ct. at p. 1224, 140 L.Ed.2d at p. 359.) The court also pointed out that recidivism "`does not relate to the commission of the offense, but goes to the punishment only:" (Id. at p. 244, 118 S.Ct. at p. 1231, 140 L.Ed.2d at p. 368.)
Since then, California courts have interpreted the prior conviction exception in Blakely to encompass more than just the conviction itself. As recognized by the California Supreme Court, the exception has been construed broadly to apply not only to the fact of a prior conviction but also other related issues that may be determined from an examination of court records. (Black II, supra, 41 Cal.4th at p. 819, 62 Cal.Rptr.3d 569, 161 P.3d 1130; see People v. McGee (2006) 38 Cal.4th 682, 704, 42 Cal.Rptr.3d 899, 133 P.3d 1054 (McGee ); People v. Thomas (2001) 91 Cal. App.4th 212, 222-223, 110 Cal.Rptr.2d 571.)
We believe parole status qualifies under the recidivism exception for three reasons:
First, parole is "a release under supervision of a parole officer following service of some term of incarceration." (Johnson v. United States (2000) 529 U.S. 694, 711, 120 S.Ct. 1795, 1806, 146 L.Ed.2d 727, 742.) Thus, parole, by its very nature, relates to the fact that the defendant was committed to state prison by virtue of having a prior felony conviction.
Second, as with a prior conviction, a parolee's status can be established by a judicial review of criminal court records. (See Apprendi supra, 530 U.S. at p. 488, *600 120 S.Ct. at p. 2361,147 L.Ed.2d at p. 454.) As noted in Yim, a defendant's "status as a parolee and his prior unsatisfactory performance on parole ... can be determined by reference to `court records' pertaining to [his] prior convictions, sentences and paroles." (Yim, supra, 152 Cal.App.4th at p. 371, 60 Cal.Rptr.3d 887.) And the examination of court records involves "`the type of inquiry that judges traditionally perform as part of the sentencing function.' " (McGee, supra, 38 Cal.4th at p. 709, 42 Cal.Rptr.3d 899,133 P.3d 1054.)
Third, as in the case of a prior conviction, the defendant's parole status "`does not relate to the commission of the offense, but goes to the punishment only.'" (Almendarez-Torres, supra, 523 U.S. at p. 244, 118 S.Ct. at p. 1231, 140 L.Ed.2d at p. 368.) A parole violation is an archetypical sentencing consideration that is materially different from the crime-based facts that posed Sixth Amendment problems under Cunningham and Blakely.
Defendant's parole status was the only factor relied on by the trial court to impose the upper term. Because poor parole performance is a factor that necessarily arises from a prior conviction and relates solely to the defendant's status as a repeat offender, we conclude that imposing the upper term sentence for defendant's crime did not run afoul of his Sixth Amendment rights within the meaning of Blakely, Apprendi and Cunningham.

DISPOSITION
The judgment is affirmed.
We concur: DAVIS, Acting P.J, and NICHOLSON, J.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, only the introduction and Factual Background, part II of the Discussion, and the Disposition are certified for publication.
[1] Undesignated statutory references are to the Penal Code.
[2] Defendant was sentenced to the upper term of eight years for count one, and one-third of the midterm for all other counts, consisting of two years for count two, one year for count three, and eight months each for counts four through six, totaling 13 years.
[**] See footnote *, ante.
[4] Guess has had a short shelf life. After granting review, the California Supreme Court transferred the case back to the Court of Appeal for the Sixth Appellate District with directions to vacate the original opinion and reconsider the cause in light of People v. Black (2007) 41 Cal.4th 799, 62 Cal.Rptr.3d 569, 161 P.3d 1130 (Black II) and People v. Sandoval (2007) 41 Cal.4th 825, 62 Cal.Rptr.3d 588, 161 P.3d 1146 (Sandoval). (See Sept. 12, 2007 transfer of People v. Guess (2007) ___ Cal.___ [2007 Cal. Lexis 11630].) The Sixth Appellate District published a new decision, bypassing the parole exception issue, but affirming the upper term sentence on other grounds. That decision has now been vacated by a second grant of review by the California Supreme Court. (See People v. Guess (2007) 158 Cal.App.4th 283, 69 Cal.Rptr.3d 652, review granted, Mar. 12, 2008, S160395.)